1  DAVID GROSSMAN (SBN 211326)
   dgrossman@loeb.com
2  LOEB & LOEB LLP
   10100 Santa Monica Blvd., Suite 2200
3  Los Angeles, CA  90067
   Telephone:  310.282.2000
4  Facsimile:   310.282.2200

5  Attorneys for Defendants
   MORGAN CREEK ENTERTAINMENT
6  GROUP; LIONSGATE
   ENTERTAINMENT; SUMMIT
7  ENTERTAINMENT LLC; LENTON T.
   HUTTON; DAVID C. ROBINSON;
8  JAMES G. ROBINSON; STEVEN G.
   BAGATOURIAN; JEREMY HAFT;
9  EDDIE GONZALEZ

10

11                  UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13

14 | JOSEPH G. KARMO,                      | Case No.:  2:18-cv-09148-PA-AGRx

15 |          Plaintiff,                   | Assigned to Hon. Percy Anderson

16 |          v.                           | **DEFENDANTS' MEMORANDUM**
                                           | **OF POINTS AND AUTHORITIES**
17 | MORGAN CREEK                          | **IN SUPPORT OF MOTION TO**
   | ENTERTAINMENT GROUP;                  | **DISMISS AMENDED**
18 | LIONSGATE ENTERTAINMENT;              | **COMPLAINT**
   | SUMMIT ENTERTAINMENT LLC;             |
19 | LENTON T. HUTTON; DAVID C.            | [*Concurrently filed:  Notice of Motion*
   | ROBINSON; JAMES G. ROBINSON;          | *and Motion; [Proposed] Order*]
20 | STEVEN G. BAGATOURIAN;                |
   | JEREMY HAFT; EDDIE GONZALEZ;          |
21 | and ICM PARTNERS,                     | Date:    April 15, 2019
                                           | Time:    1:30 p.m.
22 |          Defendants.                  | Place:   Courtroom 9A

23                                         | Complaint Filed:  October 24, 2018

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 3

    A.    Plaintiff's Allegations Of Access. ................................................ 3

    B.    Plaintiff's Allegations Of Substantial Similarity........................... 5

III.  PLAINTIFF CANNOT STATE AN INFRINGEMENT CLAIM ............ 5

    A.    Plaintiff Has Not Alleged A Plausible Claim Of Access. ............. 6

    B.    Plaintiff Has Not Sufficiently Alleged That The Script and the Film
        Are Substantially Similar. ............................................................. 8

        1.    Historical Elements In A Biographical Work Are Not
             Protectable and Cannot Be Infringed By Another Work
             Unless The Subject Works Are Virtually Identical........................ 9

    C.    Plaintiff Has Only Alleged A Claim For Copyright Infringement
        Against Defendant Hutton, And Has Not Stated Any Claim For
        Relief Against Any Other Party. .................................................. 12

IV.   CONCLUSION ..................................................................................... 14

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138 (9th Cir. 2009)................................................................ 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................... 2, 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................... 7

*Benay v. Warner Bros. Entm't, Inc.*,
   607 F.3d 620 (9th Cir. 2010).................................................... 9, 10, 11

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985)............................................................... 8

*Campbell v. Walt Disney Co.*,
   718 F. Supp. 2d 1108 (N.D. Cal. 2010) ...................................... 13

*Cano v. A World of Difference Inst.*,
   No. C95-03291 CW, 1996 U.S. Dist. LEXIS 8161
   (N.D. Cal. May 31, 1996) ............................................................... 9

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002)........................................................ 6, 8

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006)................................................... 8, 11

*Hoehling v. Universal City Studios, Inc.*,
   618 F.2d 972 (2d Cir. 1980) ......................................................... 9

*Hord v. Jackson*,
   281 F. Supp.3d 417 (S.D.N.Y. 2017)............................................ 7

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994)......................................................... 8

*Miller v. Universal City Studios, Inc.*,
   650 F.2d 1365 (5th Cir. 1981)....................................................... 9

*Narell v. Freeman*,
   872 F.2d 907 (9th Cir. 1989)........................................................ 9

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

ii

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS FIRST AMENDED
COMPLAINT

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

<u>Page(s)</u>

*Novak v. Warner Bros. Pictures, LLC*,
Order Granting Motion for Summary Judgment, No. 07-CV-4000 GAF
(PLAx) (C.D. Cal. Oct. 20, 2008), ECF No. 53, *aff'd*, 387 F. App'x 747
(9th Cir. 2010) ........................................................................................... 10, 11

*Radin v. Hunt*,
No. LA CV 10-08838 JAK, 2011 WL 13196323
(C.D. Cal. Dec. 15, 2011), *aff'd,* 499 F. App'x 684 (9th Cir. 2012) .............................. 7

*Rice v. Fox Broad. Co.*,
330 F.3d 1170 (9th Cir. 2003) ...................................................................... 6, 8

*Shaw v. Lindheim*,
919 F.2d 1353 (9th Cir. 1990) ............................................................................ 9

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000) .............................................................................. 6

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Joseph Karmo ("Plaintiff") filed this action for copyright infringement, preliminary injunction, constructive trust, and accounting against Defendants Morgan Creek Entertainment Group, Lionsgate Entertainment, Summit Entertainment LLC, Lenton Hutton, David Robinson, James Robinson, Steve Bagatourian, Jeremy Haft, Eddie Gonzales and ICM Partners (the "Morgan Creek Defendants").[1]

Plaintiff Karmo, *in pro per*, alleged that his unpublished script, entitled "Tupac: Shining Serpent" (the "Script") was infringed by the 2017 biopic, *All Eyez on Me* (the "Film").

The Morgan Creek Defendants filed a motion to dismiss Plaintiff's original complaint on or about February 24, 2019.  That same week, Plaintiff Karmo filed a motion to amend the complaint and, on February 28, the Court granted Karmo leave to file his proposed amended complaint.  The Amended Complaint contains the same insufficient allegations of access and substantial similarity as Plaintiff's original complaint.  The changes to Plaintiff's complaint primarily consist of the addition of several new parties, including Rizvi Traverse Management, LLC, and certain individuals affiliated with Rizvi Traverse and ICM.

Plaintiff's Amended Complaint should be dismissed because it suffers from the same deficiencies as his original complaint.  Specifically, Plaintiff Karmo has failed to plausibly allege access by the Morgan Creek Defendants.  The Amended Complaint should also be dismissed because it does not sufficiently allege the existence of substantial similarity of creative expression between the Script and the Film.

_____

[1] This motion is filed by all defendants with the exception of ICM Partners, which entity is separately represented.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

1

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

- <u>There Is No Plausible Allegation Of Access.</u>

Plaintiff's claim of access is based, exclusively, on a convoluted and implausible story about his Script being photocopied by Detroit-area drug dealers, who take his Script with them to Los Angeles, where one of them meets Paris Hilton at a "marijuana mansion party" and she, in turn, introduces these drug dealers to Defendant Lenton Hutton, one of the Film's credited writers.[2]  Plaintiff alleges, equally implausibly, that these two drug dealers were each given $250,000 by Mr. Hutton in exchange for a copy of Plaintiff's unpublished screenplay.  Plaintiff does not allege that he attended the marijuana mansion party, Plaintiff does not allege that the drug dealers were acting as his agents, and there are, not surprisingly, a number of logical holes in Plaintiff's far-fetched story.  Plaintiff's allegations of access are facially implausible and, as such, violate the Supreme Court's requirement that federal claims must be non-conclusory, factual, and plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

- <u>Plaintiff's Amended Complaint Fails To Allege Substantial Similarity of Creative Expression Between His Script and The Film.</u>

Plaintiff's allegations of substantial similarity also are insufficient to state a claim for copyright infringement.  Plaintiff generally alleges that his unpublished Script was copied, and that elements of his work were incorporated into the Film, but Plaintiff does not attach his Script to the Amended Complaint, and he fails to specify any creative expression that was included in his Script, and that was copied in the Film.

Instead, Plaintiff asserts that, in a four-second scene of the Film, a robbery takes place during which perpetrators steal Tupac's Rolex watch.  Plaintiff claims that, in reality, the robbery being depicted did not involve the theft of the Rolex watch and that his Script also includes a scene depicting Tupac's Rolex being

---

[2] Plaintiff's recent additions to the complaint include his allegation that Defendant Hutton was involved in the death of Tupac's mother, Afeni Shakur.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

2

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

stolen.[3]  The purported existence of a single common element in two historical works is not sufficient to state a claim for infringement, and Plaintiff's other claimed similarities simply involve a recitation of dozens of elements from Tupac's life story – a life story that neither Plaintiff, nor anyone else, can claim ownership of. Plaintiff also engages in an extended discussion of Jada Pinkett Smith's objection to the way in which she was (briefly) portrayed in the Film, but Plaintiff does not juxtapose his Script and the Film, or show any copyrightable expression that was supposedly copied from his Script and incorporated into the Film.  Further, Plaintiff does not dispute that, as a factual matter, Jada Pinkett Smith knew Tupac and attended an arts school with him in Baltimore.  It is black-letter law that historical facts are not subject to protection, and that any producer, writer or director can create a work about a historical figure, without fear that someone else interested in that same subject matter can claim to have a monopoly on those biographical facts.

Plaintiff has failed to plead sufficient facts to allege either access or substantial similarity, and his Amended Complaint should be dismissed.

## II.    STATEMENT OF FACTS

Plaintiff Joseph Karmo filed this action in *pro per*.  It is unclear from the Amended Complaint if Plaintiff Karmo has ever worked as a writer, but he nevertheless asserts that he drafted a script entitled "Tupac: Shining Serpent" in 2011, and received a copyright registration for the Script in 2012.  Amended Complaint ¶ 20.  Plaintiff alleges that Defendants' Film, *All Eyez on Me*, which was released in June of 2017, infringes on his Script.

### A.    Plaintiff's Allegations Of Access.

In attempting to plead access, Plaintiff alleges that someone named "Twig" Krikorian, alleged to be the great-nephew of Kirk Krikorian, obtained a copy of

[3] A review of the Film is not necessary at this stage, but would in any case show that this purported similarity does not exist because, in the scenes following the robbery, the Tupac character appears to be wearing the same gold watch that he was wearing prior to the robbery.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations
17445650.1
232312-10001
3
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff's Script. Plaintiff does not explain how Twig came to possess the Script. *Id.* at ¶¶ 21-22. Plaintiff asserts that, at some point, "Twig was drugged, and the script was photocopied by an individual named Fady Abdal and his girlfriend Marcella Knouna." *Id.* at ¶ 21.

Plaintiff further alleges that, after drugging "Twig" and stealing a copy of the Script, these two assailants (Fady Abdal and Marcella Knouna) traveled to California along with Twig. Christopher Hakim, a drug dealer and Fady Abdal's "boss," also joined this trip. *Id.* at ¶ 22. The trip to California was for the purpose of buying "pounds upon pounds of marijuana from Michael Straumietis' 'Marijuana Mansion Party.'" *Id.*

Plaintiff claims that, while these drug dealers were attending the Marijuana Mansion Party (also allegedly attended by LeBron James and Mark Cuban), they found their way to one of the Film's credited writers, Defendant Lenton Hutton:

> Abdal struck up a conversation with Paris Hilton, and told
> her that he had a very unique screenplay that tells the
> untold story of Tupac Shakur. Christopher Hakim and
> Jovan Tueni saw Fady Abdal talking to Paris Hilton, so
> they walked over there, as well. The three of them (Abdal,
> Hakim, and Tueni) were given a face to face meeting with
> Defendant Hutton. They were compensated for the
> material, which was sold in a back-room deal to Defendant
> Hutton. Fady Abdal, and Christopher John Hakim
> brokered a deal where they each received $250,000…

*Id.* at ¶ 23.[4]

---

[4] In his Amended Complaint, Karmo has supplemented this access paragraph by adding that "[p]rior to the release of the infringing work, the Federal Bureau of Investigation got their hands on a copy of the script used to produce the infringing work after an alleged hacker stole the script and tried selling it to an undercover, [sic] a guilty verdict, & sentenced to 5 years."

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

4

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

Plaintiff Karmo goes on to explain that: "[t]here were several Armenians involved in the theft of the screenplay" including a man named Dan Bilzerian. *Id.* at ¶ 24. Plaintiff alleges that this Marijuana Mansion Party took place in the "winter [of] 2015" and that the Film was released in June of 2017. *Id.* at ¶¶ 21-22.

### B.    Plaintiff's Allegations Of Substantial Similarity.

Plaintiff does not attach a copy of his Script to the Amended Complaint, and the only excerpt from his supposedly registered Script that is included in the Amended Complaint does not support any claim of substantial similarity.

Plaintiff asserts that the Script and the Film are substantially similar because: (1) a scene in the Film depicts Tupac being robbed and his watch being stolen; and (2) Jada Pinkett-Smith has made statements indicating that some of her interactions with Tupac in the Film were not accurate depictions of her relationship with him. With respect to the first point, Plaintiff (incorrectly) alleges that both the Script and the Film contain a trivial non-historical detail (of the watch being stolen), but regarding the second element, it is unclear from the Amended Complaint whether or not Plaintiff is alleging that certain non-historical facts about Jada Pinkett Smith were included in the Script, and are also present in the Film.

Plaintiff then lists a series of events from Tupac's life that he claims are included in the Script, including Tupac's childhood, the depiction of his famous mother, Afeni, his music career and accomplishments, his film career, his legal woes, his conflict with Christopher "Notorious B.I.G." Wallace, and the violent attacks and incidents he was involved in during his life. Other than the robbery involving the taking of the Rolex, Plaintiff does not allege that any of these life events are copyrightable, nor does he allege facts demonstrating that any specific events were taken from his work and were incorporated into the Film.

## III.    PLAINTIFF CANNOT STATE AN INFRINGEMENT CLAIM

The elements of copyright infringement are: (1) ownership of a valid copyright and (2) unauthorized copying by the defendant of protected elements of

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

5

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

the work.  *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003).

"Copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements."  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

### A.    Plaintiff Has Not Alleged A Plausible Claim Of Access.

Without direct evidence of copying, "a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work. Where there is no direct evidence of access, circumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that plaintiff's work has been widely disseminated."  *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009) (citing *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481-82 (9th Cir. 2000)).

Here, Plaintiff does not allege that his unpublished work was widely disseminated, or that he ever provided it to anyone other than Plaintiff's acquaintance "Twig" Kirkorian.  Thus, Plaintiff cannot claim access through the theory of mass distribution/wide dissemination.

Because he cannot allege widespread dissemination of his work, Plaintiff is required to allege access through non-speculative, factual allegations regarding the defendants' opportunity to review his work.  Plaintiff has not alleged a plausible chain of events linking his work to the defendants.  Instead, he has asserted a distinctly implausible story, a convoluted tale involving Paris Hilton, drug dealers, someone named "Twig" being drugged and robbed (but then also participating in the sale of the Script), and a Marijuana Mansion Party at which one of the attendees paid two drug dealers $500,000 for a script of unknown provenance.

This type of speculation is insufficient to establish access.  *See Three Boys*, 212 F.3d at 482.  The Supreme Court has made clear that the plaintiff must plead

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

*plausible facts* to state a claim for relief. *See Iqbal,* 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Plaintiff's access claim is inherently incredible, and therefore is not plausible under governing law. *See Radin v. Hunt,* No. LA CV 10-08838 JAK (SSx), 2011 WL 13196323, at *4 (C.D. Cal. Dec. 15, 2011) (rejecting infringement claim where the plaintiff had "only a highly speculative, vague theory of how Defendants would have accessed her work, and the two works in question are far from strikingly similar"), *aff'd,* 499 F. App'x 684 (9th Cir. 2012).

Plaintiff's speculative and implausible theory of access is similar to allegations that were recently rejected in a copyright infringement case in which the plaintiffs asserted that two third parties had supposedly taken the plaintiffs' work and provided it to a named defendant. *See Hord v. Jackson*, 281 F. Supp.3d 417, 423 (S.D.N.Y. 2017). In that case, the district court rejected plaintiff's speculative theory, and dismissed the complaint, holding that: "[p]laintiffs' naked assertions in their Complaint, that two non-parties allegedly showed the work to Defendants, are insufficient to establish access." This case is no different, as Plaintiff Karmo alleges that two random third parties (who he did not authorize to act for him) somehow obtained his Script, and through a convoluted and implausible chain of events, sold his Script for half a million dollars at a marijuana party.

If Karmo were permitted to make out a case for infringement based upon wholly implausible, and likely fabricated, claims of others "stealing" his work and sharing it with people connected to the Film, any claimant would be able to state a claim for infringement by simply alleging that they think a third party took their work, without authorization, and shared it with the defendants. This is not the law, and because Plaintiff's allegations of access are wholly speculative and lacking in credibility, pursuant to *Iqbal*, Plaintiff's Amended Complaint must be dismissed.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations
17445650.1
232312-10001

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

B.      **Plaintiff Has Not Sufficiently Alleged That The Script and the Film Are Substantially Similar.**

The Ninth Circuit employs a two-part test to determine whether two works are substantially similar.  The two components of this test are the objective "extrinsic test" and the subjective "intrinsic test."  *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006).  With respect to literary works, such as films and television shows, the extrinsic test evaluates the "'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events.'"  *Id.* (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)).  In applying the extrinsic test, the "court 'compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters.'"  *Id.* (quoting *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985)).  The intrinsic test is the province of the jury.  Accordingly, on a motion to dismiss or for summary judgment, "only the extrinsic test is important."  *Kouf*, 16 F.3d at 1045.

General plot ideas are not protectable and cannot give rise to a claim for copyright infringement.  *See Berkic*, 761 F.2d at 1293.  Similarly, "*scenes a faire*," elements of literary works that naturally flow from generic plot-lines or sequences, are not protectable.  *Rice*, 330 F.3d at 1175 ("expressions indispensable and naturally associated with the treatment of a given idea 'are treated like ideas and are therefore not protected by copyright'") (citation omitted).  Thus, the relevant test examines "not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters."  *Berkic*, 761 F.2d at 1293.  When comparing a copyrighted and accused work, courts "must take care to inquire only whether 'the <u>protectable elements, standing alone,</u> are substantially similar.'"  *Cavalier*, 297 F.3d at 822 (emphasis in original; citations omitted).

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

8

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

As alleged in the Amended Complaint, any similarities between the two works are derived from unprotectable historical facts, incidents, or *scenes-a-faire* that naturally flow from Shakur's life story.

1. **Historical Elements In A Biographical Work Are Not Protectable and Cannot Be Infringed By Another Work Unless The Subject Works Are Virtually Identical.**

"It is well settled that copyright protection extends only to an author's expression of facts and not to the facts themselves. This dichotomy between facts and their expression derives from the concept of originality which is the premise of copyright law." *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1368 (5th Cir. 1981) (citations omitted); *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990) ("[c]opyright law protects an author's expression; facts and ideas within a work are not protected"); *Cano v. A World of Difference Inst.*, No. C95-03291 CW, 1996 U.S. Dist. LEXIS 8161, at *25 (N.D. Cal. May 31, 1996) (describing the "narrow scope of protection afforded a factual work").

Importantly, "[h]istorical facts and theories may be copied, as long as the defendant does not 'bodily appropriate' the expression of the plaintiff." *Narell v. Freeman*, 872 F.2d 907, 910-11 (9th Cir. 1989) (citation omitted); *accord Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) ("Historical facts are…unprotected by copyright law."). "To avoid a chilling effect on authors who contemplate tackling an historical issue or event, broad latitude must be granted to subsequent authors who make use of historical subject matter, including theories or plots." *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 978 (2d Cir. 1980). Accordingly, the copyright in non-fiction or biographical works is "thin," and a court will only find infringement if the accused work is "virtually identical" to the plaintiff's work. *Id*. at 980 ("courts should assure themselves that the works before them are not virtually identical.").

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

9

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Tupac Shakur was a public figure – and his personal life, music career, film career, and violent death were fodder for countless media reports.  Thus, Plaintiff's copyright interest in the Script is subject to only narrow protection; he must allege that the Script and the Film are "virtually identical" to overcome dismissal.  Plaintiff has not come close to satisfying that standard, instead summarizing various historical elements from Tupac's life that Plaintiff alleges were documented in his Script.  Plaintiff does not even claim that those same historical facts were depicted in the Film, and he certainly does not allege that those elements were copied by the Defendants in a "virtually identical" manner.

The Ninth Circuit, in *Benay,* 607 F.3d 620, held that the plaintiff's screenplay entitled "The Last Samurai" and the defendants' film entitled "The Last Samurai" were not substantially similar.  Both works portrayed an American war veteran who moves to Japan to train the Japanese Army in Western warfare techniques to help put down the Satsuma (samurai) Rebellion.  In affirming summary judgment for the defendant, the Ninth Circuit explained:  "A number of similarities between the works arise out of the fact that both works are based on the same historical events, take place at the same time and in the same country, and share similar themes. These similarities are largely between unprotected elements—historical facts, characteristics that flow naturally from their shared premise, and *scenes-a-faire*." *Id.* at 629.

Likewise, in *Novak v. Warner Bros. Pictures, LLC*, 387 F. App'x 747 (9th Cir. 2010), the Ninth Circuit affirmed the district court's ruling, holding that there was no substantial similarity of protected expression between two works depicting the same historical events.  In *Novak*, the plaintiffs claimed that their film chronicling the tragic 1970 plane crash that befell the Marshall University football team was infringed by the motion picture *We Are Marshall*, which depicted the same characters and events.  This Court granted summary judgment for defendants, determining that "the only protection available to Plaintiffs lies in their presentation

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

of historical events by which the Court refers to the sequencing, pace, narration, and selection of footage, photographs, events and individuals portrayed – **but not the events themselves**."  Order Granting Motion for Summary Judgment, *Novak v. Warner Bros. Pictures, LLC,* No. 07-CV-4000 GAF (PLAx) (C.D. Cal. Oct. 20, 2008), ECF No. 53 at 19 (emphasis added).  The Ninth Circuit affirmed, holding that: "[i]n this case, the only concrete or articulable similarities between *Ashes to Glory* and *We Are Marshall* consist of unprotectable *scenes-a-faire*…and historical facts, which, like all facts, whether 'scientific, historical, biographical, [or] news of the day[,]'…'may not be copyrighted and are part of the public domain available to every person.'"  387 F. App'x at 749 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347-48 (1991)).

Courts routinely grant [dismissal] in cases involving copyright infringement claims based on historical facts, *scenes-a-faire* and unprotectable expression.  *See, e.g.*, *Funky Films*, 462 F.3d at 1077-78.  Like *Benay* and *Novak* (as well as the Ninth Circuit's decision in *Narell* and the Second Circuit's decision in *Hoehling*), the only alleged similarities between the Script and the Film are based on the commonalities arising from the depiction of key **facts** from the life and career of Tupac Shakur.

Under the Ninth Circuit's governing extrinsic test, as a matter of law, Plaintiff has failed to allege sufficient similarities between the protectable elements of the plot, themes, dialogue, mood, setting, pace, characters and sequence of events in the two works.  *See Benay*, 607 F.3d at 624.

Instead of alleging similarities of creative expression sufficient to satisfy the extrinsic test, Plaintiff cites to a four-second snippet in the Film in which he claims that a watch was taken from Tupac during a violent attack.  Amended Complaint, ¶ 33 (citing to Film, 1:11:28 – 1:11:32).  Plaintiff has not submitted the Film or his alleged Script to the Court, so it is not possible to determine the accuracy of Plaintiff's representations, but regardless, a four-second clip in which there is a

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

11

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

single reference to a watch is not sufficient to support a claim for "substantial similarity" of plot between two works of authorship.

Plaintiff also claims that Jada Pinkett Smith objected to her fleeting portrayal (as a teenager) in the Film, but that has no bearing on a claim for copyright infringement. To the extent Plaintiff is claiming that Jada Pinkett Smith is a protected character – he is incorrect. Ms. Smith is a public figure, and Plaintiff does not dispute that she attended arts school with Tupac Shakur and had a friendly relationship with him during his life. To the extent Plaintiff is claiming that the interactions with Jada Pinkett Smith constitute substantial similarity of plot, he is also mistaken. Plaintiff merely asserts that there is a single scene in the Film in which Tupac reads a poem to Jada Pinkett Smith. He claims that the Film somehow copied his Script in order to create this sequence. Karmo does not attach his Script to his Amended Complaint, but the excerpt from his alleged Script that is included in the Amended Complaint **does not support his claim of similarity**. The Script excerpt (that Plaintiff attempts to juxtapose with the Film's depiction of Tupac reading a poem to Jada Pinkett Smith in a tearful goodbye) only involves a young Tupac saying "I've been writing a lot of poetry lately." *Id.* at ¶ 29.

Because Plaintiff has not alleged the existence of substantial similarity of protectable expression between the works, his Amended Complaint must be dismissed.[5]

## C. Plaintiff Has Only Alleged A Claim For Copyright Infringement Against Defendant Hutton, And Has Not Stated Any Claim For Relief Against Any Other Party.

While Plaintiff alleges that Defendant Lenton Hutton accessed, and copied, his Script, Plaintiff does not allege that the other defendants, Morgan Creek,

---

[5] Plaintiff also has not submitted the works at issue to the Court, but the works themselves cannot rescue Plaintiff's defective Amended Complaint from dismissal as they do not contain any similarities of protectable expression.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

12

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

Lionsgate, Summit, James Robinson, David Robinson, Steve Bagatourian, Jeremy Haft, Eddie Gonzales or ICM Partners either accessed or copied his Script. All of those parties should be dismissed for failure to state a claim for copyright infringement against them.

Plaintiff does not allege any claims for vicarious infringement, but instead alleges: (1) Actual Damages for Copyright Infringement; (2) Statutory Damages for Copyright Infringement; (3) Court Fees and Costs; (4) Constructive Trust; (5) Preliminary Injunction; and (6) Accounting. Aside from the first claim, for direct copyright infringement, none of the other claims state a viable claim for relief under the law. Statutory damages, court costs, constructive trust, preliminary injunction and accounting are all remedies, not separate claims.

For the reasons discussed above, Plaintiff has failed to state a claim for copyright infringement. The remaining "claims" are not viable independent causes of action but instead, are either remedies, or are state law claims that are subject to dismissal for the same reasons that Plaintiff' copyright infringement claim fails. *See Campbell v. Walt Disney Co*., 718 F. Supp. 2d 1108, 1116 (N.D. Cal. 2010) (granting motion to dismiss and holding that: "Based on the allegations above, the Court finds that both of Plaintiff's state law claims [for constructive trust and unjust enrichment] are based on her claim of Defendants' unauthorized use of her copyrighted material. In light of the Court's finding that Plaintiff cannot state a claim for copyright infringement, the Court finds that Plaintiff cannot maintain her state law claims.").

Counts Two through Six of the Amended Complaint are defective, as a matter of law, on their face and must be dismissed. Further, regardless of whether or not the Court dismisses Plaintiff's claim against Lenton Hutton for copyright infringement, all of the remaining defendants must be dismissed for failure to state a claim against any of them for direct copyright infringement.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

13

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT

1

## IV.   CONCLUSION

2        For the reasons discussed herein, Defendants request that Plaintiff's Amended

3   Complaint be dismissed.

4

5   Dated:  March 13, 2019                LOEB & LOEB LLP
                                          DAVID GROSSMAN
6

7                                         By: */s/ David Grossman*
                                              David Grossman
8                                             Attorneys for Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

17445650.1
232312-10001

14

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS AMENDED
COMPLAINT